IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

| | | |
|---|---|---|
| **CONSTANCE R. MILLER,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:10CV00044 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | By: James P. Jones |
| **COMMISSIONER OF** | ) | United States District Judge |
| **SOCIAL SECURITY,** | ) | |
| | ) | |
| Defendant. | ) | |

*Gregory R. Herrell, Arrington Schelin & Herrell, P.C., Bristol, Virginia, for Plaintiff; Eric P. Kressman, Regional Chief Counsel, Region III; Shannon Petty, Assistant Regional Counsel, Rafael Melendez, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, Philadelphia, Pennsylvania, for Defendant.*

In this social security case, I affirm the final decision of the Commissioner.

I

The plaintiff, Constance R. Miller, filed this action challenging the final decision of the Commissioner of Social Security (the "Commissioner") denying her claims for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits pursuant to titles II and XVI of the Social Security Act

("Act"), 42 U.S.C.A. §§ 401-433, 1381-1383d (West 2003 & Supp. 2010). Jurisdiction of this court exists pursuant to 42 U.S.C.A. §§ 405(g) and 1383(c) (3).

Miller filed for benefits on August 26, 2007, alleging she became disabled January 27, 2006, due to a combination of digestive tract ailments, fibromyalgia, and mental impairments. Her claim was denied initially and upon reconsideration. Miller received a hearing before an administrative law judge ("ALJ"), during which Miller, represented by counsel, and a vocational expert testified. The ALJ denied Miller's claim, and the Social Security Administration Appeals Council denied her Request for Reconsideration. Miller then filed her Complaint with this court, objecting to the Commissioner's final decision.

The parties have filed cross motions for summary judgment and have briefed the issues. The case is ripe for decision.

II

Miller was 26 years old when she filed for benefits, making her a younger person under the regulations. 20 C.F.R. § 404.1563(c) (2010). Miller has completed high school and obtained a certificate in medical billing, coding, and medical transcription, although she has never used that certificate in her prior employment. She has worked in the past in various customer service positions, such as a deli worker, packer, cashier, telemarketer, food server, and customer

service representative. Miller has not engaged in substantial gainful activity since January 2006.

In late 2005, Miller's family doctor referred her for a psychiatric evaluation after Miller reported depression, severe mood swings, extreme rage, difficulty sleeping, crying spells, difficulty with orientation, racing thoughts, moodiness, impatience, sadness, anxiety, nervousness around people, paranoid ideations, a lack of energy, and low weight. In March 2006, Miller presented to Maria C. Abeleda, M.D., a psychiatrist with Smyth Mental Health Clinic, who diagnosed Miller with bipolar I disorder, generalized anxiety disorder, and social anxiety. Dr. Abeleda assessed Miller with a global assessment of functioning ("GAF") score of 55, indicating moderate impairment in social and occupational functioning.[1]

For the next three years, Miller continued to receive follow-up care from Dr. Abeleda. Appointments with Dr. Abeleda in May and July 2006 noted improvements in Miller's conditions from the medication prescribed her. Dr. Abeleda found that Miller was more stable, better able to concentrate, non-

---

[1] The GAF scale is a method of considering psychological, social and occupational function on a hypothetical continuum of mental health. The GAF scale ranges from 0 to 100, with serious impairment in functioning at a score of 50 or below. Scores between 51 and 60 represent moderate symptoms or a moderate difficulty in social, occupational, or school functioning, whereas scores between 41 and 50 represent serious symptoms or serious impairment in social, occupational, or school functioning. See Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 1994).

psychotic, coherent, and goal-oriented. Miller denied any side effects from medication. Subsequent appointments in January 2007 show continued improvement to Miller's condition, with Dr. Abeleda only adjusting the prescriptive treatment to address Miller's difficulties sleeping. In mid and late 2007, Miller reported continued improvement, with no anxiety attacks or mood swings.

On October 3, 2008, Dr. Abeleda completed a Medical Assessment of Ability to Do Work-Related Activities (Mental) form. She opined that Miller retained no useful ability to relate to co-workers, deal with the public, interact with supervisors, deal with work stresses, handle complex and detailed job instructions, behave in an emotionally stable manner, and relate predictably in social situations. Dr. Abeleda assessed Miller with serious limitations in her ability to follow work rules, use judgment with the public, function independently, maintain attention and concentration, handle simple job instructions, and demonstrate reliability. Dr. Abeleda predicted that Miller would miss more than two days of work per month.

In preparation for her disability application, Miller presented to Ralph Ramsden, Ph.D., for a consultative mental health examination. In this appointment, Miller reported continuing mental impairments and side effects from her medication. Dr. Ramsden noted that she was visibly anxious, agitated, and had difficulty expressing herself coherently. Dr. Ramsden found no indications of

malingering and diagnosed Miller with bipolar I disorder, mixed with psychosis and anxiety disorder, with intermittent panic attacks. Dr. Ramsden assessed Miller as having a GAF score of 50 and opined that Miller was "unable to work due to mental health issues." (R. at 374.)

Miller's records were also reviewed by two state agency psychologists. Both concluded that Miller was not significantly limited in her ability to understand, remember, and carry out simple instructions; remember work-like procedures; and make simple work-related decisions. They found mild limitations to Miller's ability to perform daily activities, and moderate limitations in social functioning and concentration. Both state agency psychologists concluded that Miller was able to work.

After reviewing Miller's records, the ALJ determined that Miller had severe impairments of bipolar disorder, fibromyalgia, and irritable bowel syndrome, but that none of these conditions, either alone or in combination, met or medically equaled a listed impairment. Taking into account Miller's limitations, the ALJ determined that Miller retained the residual functional capacity to perform light work, provided that it did not require climbing, exposure to heights, or work around operating machinery. The ALJ also noted that Miller's mental impairments further limited her to simple, non-complex jobs that did not require public interaction or working with co-workers. The vocational expert testified that

someone with Miller's residual functional capacity could perform occupations such as laundry worker, unskilled clerical jobs, and cleaning positions. According to the vocational expert, there are approximately 14,800 jobs in the region and 280,000 jobs in the national economy. Relying on this testimony, the ALJ concluded that Miller was able to perform work that existed in significant numbers in the national economy and was therefore not disabled under the Act.

Following the ALJ's unfavorable decision, Miller requested review and submitted additional evidence to the Appeals Council for consideration. This evidence consisted of an updated mental status examination performed by Ronald Brill, Ph.D., on April 21, 2009, three months after the ALJ's decision. Dr. Brill diagnosed Miller with bipolar I disorder, mixed, with psychotic features; panic disorder with agoraphobia; and generalized anxiety disorder. He assessed Miller's GAF score at 50. Dr. Brill's mental assessment form opined that Miller retained no useful ability in six of the fifteen areas of mental functioning, and was seriously limited in an additional six areas. He predicted she would miss more than two days of work per month, and he noted significant deterioration in her conditions following a January 2009 car accident. The Appeals Council denied review.

Miller argues that the ALJ's decision is not supported by substantial evidence because she erred in evaluating her mental impairments and failed to give

appropriate weight to the assessment of her treating physician. For the reasons below, I disagree.

III

The plaintiff bears the burden of proving that she is under a disability. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). The standard for disability is strict. The plaintiff must show that her "physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C.A. § 423(d) (2) (A).

In assessing DIB and SSI claims, the Commissioner applies a five-step sequential evaluation process. The Commissioner considers whether the claimant: (1) has worked during the alleged period of disability; (2) has a severe impairment; (3) has a condition that meets or equals the severity of a listed impairment; (4) could return to her past relevant work; and (5) if not, whether she could perform other work present in the national economy. *See* 20 C.F.R. §§ 404.1520(a) (4), 416.920(a) (4) (2009). If it is determined at any point in the five-step analysis that the claimant is not disabled, the inquiry immediately ceases. *Id.*; *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983). The fourth and fifth steps of the

inquiry require an assessment of the claimant's residual functional capacity, which is then compared with the physical and mental demands of the claimant's past relevant work and of other work present in the national economy. *Id.* at 869.

In accordance with the Act, I must uphold the Commissioner's findings if substantial evidence supports them and the findings were reached through application of the correct legal standard. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation marks and citation omitted). Substantial evidence is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is the role of the ALJ to resolve evidentiary conflicts, including inconsistencies in the evidence. *Seacrist v. Weinberger*, 538 F.2d 1054, 1956-57 (4th Cir. 1976). It is not the role of this court to substitute its judgment for that of the Commissioner. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

Miller's current appeal focuses on her mental condition. She argues that the ALJ's decision was not supported by substantial evidence because the ALJ did not accord proper weight to the opinions of Miller's treating physician of three years, Dr. Abeleda. A treating physician's medical opinion will be given controlling weight when it is "well-supported by medically acceptable clinical and laboratory

diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2010). However, the ALJ has "the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).

In the present case, the ALJ rejected Dr. Abeleda's assessments of the impact of Miller's impairments on her ability to perform work-related functions. Dr. Abeleda found Miller to be severely or moderately impaired in all areas assessed under the agency form. The ALJ found that these conclusions were contradicted by Dr. Abeleda's own treatment records. Although the medical evidence of record establishes that Miller sought treatment of both a therapist and a psychiatrist to treat her medical impairments over a period of years, the record also shows that her conditions improved with treatment. Dr. Abeleda's notes reflect that Miller consistently self-reported improvements to her mental health with appropriate treatment. Dr. Abeleda regularly described Miller as "stable," "well-oriented," "coherent," and "goal directed." (R. at 218-19, 245, 308-09.) Additionally, even though Dr. Abeleda saw Miller consistently, these appointments were dispersed at several month intervals, and there are no notations in the record that indicate the difficulties or level of difficulties that would require the occupational and daily living adjustments reflected in Dr. Abeleda's assessment

form.  Moreover, Miller's GAF score showed only, at worst, moderate limitations. Coupled with Miller's own reports of improved symptoms and relatively functional daily living activities, I find that substantial evidence supports the ALJ's determination that Dr. Abeleda's sustained clinical findings contradict her restrictive work-function assessment.

For the same reasons, I do not find error in the ALJ's rejection of Dr. Ramsden's opinion.  First, Dr. Ramsden only saw Miller on one occasion for a consultative examination.  Because he was not a treating source, his opinion was entitled to less deference from the outset.  Additionally, his restrictive assessment of Miller's condition contradicts the GAF score he attributed to her, as well as the overall evidence of record and the opinions of the state agency evaluating psychologists.  Lastly, the ALJ properly rejected Dr. Ramsden's conclusion that Miller was unable to work as an issue properly reserved for determination by the Commissioner.  20 C.F.R. §§ 404.1527(e); 416.927(e)(1) (2010).

Finally, Miller contends that the Appeals Council erred in failing to adequately consider additional medical evidence presented to it following the ALJ's hearing and decision.

When a claimant seeks review by the Appeals Council, the Council first makes a procedural decision to either grant or deny review.  If the Appeals Council denies review, that denial renders final the decision of the ALJ.  It is thus the

decision of the ALJ, and not the procedural decision of the Appeals Council to deny administrative review, that is subject to judicial review. *See* 20 C.F.R. §§404.967-981, 416.1467-1481 (2010).

The Appeals Council must consider evidence submitted to it when it is deciding whether to grant review, "'if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision.'" *Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 953 F.2d 93, 95-96 (4th Cir. 1991) (en banc) (quoting *Williams v. Sullivan*, 905 F.2d 214, 216 (8th Cir. 1990)). Evidence is new if it is not duplicative or cumulative. *See Wilkins,* 953 F.2d at 96. Evidence is material "if there is a reasonable possibility that the new evidence would have changed the outcome" of the ALJ's decision. *Id.*

Where the Appeals Council did consider the new evidence, but denied review, the Fourth Circuit has held that the district court should consider the record as a whole, including the new evidence, in order to determine whether the decision of the ALJ is supported by substantial evidence. *See Id.*[2]

I find that the results of Dr. Brill's consultative examination on April 21, 2009, three months after the ALJ's ruling, do not change the outcome of this

---

[2] While the Appeals Council must "articulate its own assessment of [the] additional evidence," *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992), it need not announce detailed reasons for finding that the evidence did not warrant a change in the ALJ's decision. *See* 20 C.F.R. § 404.970(b) (2010).

appeal. The substance of Dr. Brill's evaluation is that Miller's conditions worsened following a January 2009 car accident. Nevertheless, Dr. Brill assigned Miller a similar GAF score and found similar limitations as did Miller's previous physicians. Although Dr. Brill's evaluation indicates more serious impairments than Miller's treating source found, Dr. Brill's opinion substantially comports with that of Dr. Ramsden. Moreover, Dr. Brill's evaluation appears to rely heavily on Miller's self-reported development of hallucinations and descriptions of the car accident as giving her a "concussion" and causing her to be "in a coma for 2 days." (R. at 397.) Miller has submitted no medical evidence to support claims of such a serious physical injury, and particularly given the doubts as to her credibility already on record, I find that a remand on the basis of these claims would be inappropriate without such documentation. Thus, I find that Dr. Brill's evaluation would not affect the ALJ's conclusion, because the limitations currently imposed in the ALJ's evaluation fully account for the reliable supplemental evidence.

IV

Miller also argues that there is a lack of substantial evidence to support the ALJ's decision because the ALJ failed to identify Miller's functional limitations, assess her work-related abilities, or explain how medical evidence supported her residual function assessment. Miller claims that these omissions violated the requirements of Social Security Ruling ("SSR") 96-8p, by failing to undertake a

function by function analysis based on all credible evidence. *See* 20 CFR §§ 404.1520; 416.920a (2010).

Under an area designated for psychiatric review technique, ruling 96-8p requires the ALJ at steps four and five of the sequential evaluation process to apply "a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments . . . ." Miller asserts that the ALJ failed to complete the required detailed assessment and failed to base her assessment on all the relevant evidence in the case record.

I find that the ALJ provided a detailed assessment of Miller's mental limitations and complied with the procedures of SSR 96-8p. The ALJ accommodated Miller's restrictions on social interactions, her impairments in concentration, persistence, and pace, and addressed specific functional limitations. The occupations suggested by the vocational expert all take into account Miller's limitations in these areas, and thus the ALJ properly took Miller's limitations in social functioning and concentration into account.

V

For the foregoing reasons, the plaintiff's Motion for Summary Judgment will be denied, and the defendant's Motion for Summary Judgment will be granted. A

final judgment will be entered affirming the Commissioner's final decision denying benefits.

DATED: March 22, 2011

/s/ James P. Jones
United States District Judge